| | | | |
|---|---|---|---|
| | AUSA: Corinne Lambert | Telephone: (313) 226-9129 | |
| AO 91 (Rev. 11/11)  Criminal Complaint | Special Agent: Megan So, SSA-OIG | Telephone: (313) 590-4692 | |

# UNITED STATES DISTRICT COURT
for the

Eastern District of Michigan

| | |
|---|---|
| United States of America<br>v.<br>D-1 Djenowa White<br>D-2 Michael Hobbs | Case: 2:25−mj−30449<br>Assigned To : Unassigned<br>Case No.  Assign. Date : 7/15/2025<br>Description: CMP USA V. WHITE ET AL (DJ) |

### CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __11/2017-12/2020 and 08/2021-04/2023__ in the county of __Wayne__ in the __Eastern__ District of __Michigan__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 641 | Theft of Government Funds |
| 18 U.S.C. § 1383a(a)(3) | Supplemental Security Income Fraud |
| 18 U.S.C. § 1383a(a)(4) | Social Security Representative Payee Fraud |

This criminal complaint is based on these facts:
See attached affidavit

☑ Continued on the attached sheet.

*Complainant's signature*

Megan So, Special Agent, SSA-OIG
*Printed name and title*

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: July 15, 2025

City and state: Detroit, MI

*Judge's signature*

Hon. Kimberly G. Altman, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# CRIMINAL COMPLAINT AND ARREST WARRANT

I, **MEGAN SO,** being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1) I am a Special Agent with the Social Security Administration, Office of the Inspector General, Office of Investigations (SSA/OIG/OI) and have been so employed since February 2020. I hold a bachelor's degree in Business Administration from the University of Michigan–Dearborn. I am a graduate of the Federal Law Enforcement Training Center in Glynco, GA, having completed its Criminal Investigator Training Program. Additionally, I completed the Inspector General Investigator Training Program through the Council of the Inspector General on Integrity and Efficiency. Before becoming a Special Agent, I spent eleven years processing benefit applications and resolving benefit-related matters for the SSA, first as a Claims Representative, and then as an Operations Supervisor. My current job duties include conducting investigations of violations of Social Security laws and related statutes, including but not limited to Title 18 U.S.C. § 641 (Theft of Government Funds) and Title 42 U.S.C. § 1383a (Supplemental Security Income Fraud). I am authorized to execute warrants and make arrests.

2)     I have been assigned to an investigation concerning an alleged male victim (hereinafter MV-1), who was entitled to Supplemental Security Income (SSI) benefits as a disabled child. During MV-1's period of entitlement, his benefits were allegedly misused by two of his prior representative payees, Djenowa WHITE (hereinafter WHITE) and Michael HOBBS (hereinafter HOBBS), who converted MV-1's benefits for their personal use. The alleged theft of SSA funds by WHITE and HOBBS constitutes violations of Title 18 U.S.C. § 641 (Theft of Government Funds), Title 42 U.S.C. § 1383a(a)(3) (SSI Fraud), and Title 42 U.S.C. § 1383a(a)(4) (SSI Representative Payee Misuse). I have prepared this affidavit in support of a criminal complaint and arrest warrants for WHITE and HOBBS.

3)     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is presented for the limited purpose of showing there is sufficient probable cause for the requested complaint and warrants and does not set forth all of my knowledge about this matter.

4)     Based on my investigation thus far, there is probable cause to believe that WHITE and HOBBS violated 18 U.S.C. § 641, 42 U.S.C. § 1383a(a)(3), and 42 U.S.C. § 1383a(a)(4) by intentionally failing to report to the SSA the fact

that they no longer had physical custody of MV-1, and then converting to their own use the SSI benefits intended for him.

## INVESTIGATION SUMMARY

5) WHITE is MV-1's godmother and former guardian. The investigation revealed that WHITE received monthly SSI benefits on behalf of MV-1 from November 2017 through December 2020. However, MV-1 was removed from WHITE'S care on November 20, 2017, and he never returned to her residence. Michigan Department of Health and Human Services (MDHHS) records show that MV-1 resided in various child caring institutions, hospitals, and emergency residential shelters during that time. As part of her scheme, WHITE knowingly withheld MV-1's change in physical custody from the SSA, while she continued to receive and utilize his monthly SSI benefits. This resulted in a fraud loss of $29,912.00.

6) HOBBS is MV-1's father. HOBBS was interviewed as a witness as part of the investigation into WHITE. During the interview, HOBBS expressed contempt for WHITE in that she would take MV-1's SSI benefits when she was not caring for him. HOBBS indicated that he was now MV-1's representative payee and acknowledged that the money he received was MV-1's money. HOBBS received SSI benefits on behalf of MV-1 from

- 3 -

February 2021 through April 2023. However, MV-1 was removed from HOBBS'S care on July 27, 2021, and subsequently placed in juvenile detention followed by various child caring institutions and a hospital. As part of his scheme, HOBBS knowingly withheld MV-1's change in physical custody from the SSA, while he continued to receive and utilize MV-1's monthly SSI benefits. This resulted in a fraud loss of $17,718.00.

## PROBABLE CAUSE

### Supplemental Security Income Program Background

7) The SSA administers the SSI program under Title XVI of the Social Security Act. SSI is a federal income supplement program designed to help aged, blind, and disabled people with little or no income and resources. SSI provides eligible recipients, both adults and children, with cash payments to meet basic needs for food, clothing, and shelter. After a beneficiary is approved for SSI, they undergo periodic reviews, known as SSI redeterminations, that specifically address the living arrangements of the beneficiary, including address, rent, institutionalizations or hospitalizations, as well as other qualifying factors, to verify continued program eligibility. Generally, an individual who is a resident of a public institution for a full calendar month is not eligible for SSI benefits. Although there are

exceptions, this commonly includes penal institutions and medical treatment facilities.

8) The SSA does not pay benefits directly to children, so a parent or legal guardian often applies to receive benefits on the child's behalf. The parent or legal guardian will complete an application to become the child's "representative payee" (hereinafter payee). As part of the application process, the applicant agrees to use the benefits for the care and needs of the child, and to report if the child leaves his/her care. If the SSA learns that the payee is not using the benefits for the child's needs, it will stop sending money to the payee. If the payee did not use the benefits appropriately for the child, the SSA considers the benefits to have been "misused." Additionally, if the SSA learns that the payee no longer has custody of the child due to the child being placed in a public institution, the SSA will suspend benefits to the payee.

## Djenowa White Investigation

9) In early 2021, the SSA/OIG/OI received an allegation from an SSA field office in Detroit, MI, which indicated that MV-1 may have been a victim of payee misuse by WHITE during the timeframe of November 2017 through December 2020.

10) According to SSA records, MV-1 became entitled to SSI Disabled Child's benefits in 2006, soon after his birth. In October 2017, WHITE applied and was selected to become his payee. On the payee application, WHITE indicated that she was MV-1's legal guardian and that he lived with her at her residence in Highland Park, MI. In support, WHITE supplied the SSA with a copy of the Letters of Guardianship, issued by the Probate Court in Wayne County, Michigan on October 5, 2017. WHITE began receiving SSI benefits as payee for MV-1 in November 2017. In both the representative payee application and the payee selection notice, the SSA informed WHITE that she was required to report any changes that may affect MV-1's eligibility for SSI to the SSA within 10 days after the month the change takes place. Included in the list of changes to report were whether MV-1 moved or if he was in a hospital, jail, or other institution for a full calendar month.

11) In April 2019, WHITE completed an SSI redetermination on behalf of MV-1. As part of the review, WHITE stated that MV-1 had not spent a calendar month in a hospital, nursing home, correctional facility, or any type of institution since April 1, 2017. She indicated that MV-1 continued to reside with her and that he paid rent of $175.00 monthly.

12) SSA records further reflect that HOBBS, MV-1's father, applied to be MV-1's payee in December 2020. In support of his application, HOBBS provided the SSA with a Wayne County Court Judgment ordering that MV-1 be placed in HOBBS'S care effective November 2020. HOBBS was subsequently selected as payee. The last SSI benefit payment issued to WHITE on behalf of MV-1 was on December 31, 2020, for the benefit month of January 2021. HOBBS received his first SSI payment on MV-1's behalf in February 2021.

13) The investigation revealed that MV-1 was removed from WHITE's care on November 20, 2017, and that he continuously resided in multiple institutions through November 2020. The MDHHS provided documentation of MV-1's living arrangements, which are listed below:

| Start Date | End Date | Facility |
| --- | --- | --- |
| 11/20/2017 | 12/05/2017 | Wolverine Center – Emergency Residential Shelter |
| 12/05/2017 | 12/08/2017 | Children's Hospital of Michigan |
| 12/08/2017 | 12/15/2017 | Kingswood Hospital |
| 12/15/2017 | 02/20/2018 | Children's Village – Emergency Residential Shelter |
| 02/20/2018 | 10/25/2019 | Methodist Children's Home – Child Caring Institution |
| 10/25/2019 | 12/05/2019 | Clarence Fischer Center – Emergency Residential Shelter |
| 12/05/2019 | 04/22/2020 | Clarence Fischer Center – Short-term Residential |
| 04/22/2020 | 11/23/2020 | Clarence Fischer Center – Mental Health and Behavior Stabilization |
| 11/23/2020 | N/A | Parental Home |

14) I interviewed WHITE in April 2021. She admitted that MV-1 left her care in November 2017 and continuously lived in different mental health facilities until the end of 2020. WHITE claimed that she spent MV-1's SSI benefits on him by providing him with clothes, food, shoes, and cash when she visited him. She asserted that she visited MV-1 at the MDHHS office almost every week in 2018, possibly every other week in 2019, and at HOBBS'S residence in 2020. Additionally, WHITE alleged that MV-1 would come home from the institution(s) on the weekends using a "home pass." When asked why she was dishonest with the SSA about MV-1's living arrangements, WHITE said she thought she would have indicated on the paperwork that MV-1 was living with her/living at a facility.

15) I also interviewed HOBBS in April 2021, as a witness in the investigation involving WHITE. HOBBS indicated that he visited MV-1 at the MDHHS office in 2019 and 2020. HOBBS added that towards the end of 2020, MV-1 came to HOBBS'S home on some day passes and one overnight pass. According to HOBBS, WHITE only saw MV-1 one time during HOBBS'S home pass. HOBBS indicated that WHITE never provided him or MV-1 with any items except for once in 2017, when she gave MV-1 some clothes

and shoes. HOBBS expressed contempt for WHITE in that she took MV-1's SSI benefits even though she was not taking care of him.

16) I also interviewed MV-1 in April 2021. He indicated that WHITE is his godmother. He also indicated that she used to visit him at the MDHHS office when his mom visited, and that she would bring him clothes and shoes and give him money on his birthday. MV-1 said WHITE would give him between $5 and $30, but she stopped because he hadn't seen her in a long time. MV-1 could not recall the last time he had seen WHITE.

17) I interviewed and corresponded multiple times with MV-1's MDHHS case worker, who oversaw MV-1's case for three years (approximately 2017-2020) and facilitated MV-1's visits with his mother. The case worker indicated that the only item WHITE provided for MV-1 was one pair of shoes, that WHITE never had home passes for MV-1, and that WHITE did not contribute funds to MV-1's care.

18) In the course of the investigation, I obtained WHITE's bank records for the Comerica Direct Express account into which MV-1's SSI benefits were deposited from November 2017 through January 2021. A majority of the funds withdrawn from the Direct Express account were processed through ATM cash withdrawals. Additionally, debit cards associated with the Direct

Express account were used for over 200 purchase transactions, including dozens of Lyft charges, over $1,000 in vehicle-related expenses, over $1,500 in telephone-related expenses, retail purchases at jewelry, liquor, and beauty supply stores, Western Union transfers, and two trips out of state.

19) I provided the SSA with my investigative findings regarding WHITE. The SSA determined that WHITE misused $29,912.00 of MV-1's SSI benefits because she continued to receive and use the benefits even though MV-1 was not in her custody from November 2017 through December 2020. Of the misused funds, MV-1 was eligible for a small portion; the remaining funds belonged to the SSA.

## Michael Hobbs Investigation

20) In March 2023, the SSA/OIG/OI received an allegation from a MDHHS MV-1 care specialist which indicated that MV-1 was removed from HOBBS'S custody on July 27, 2021, and that HOBBS continued to receive MV-1's monthly SSI benefits. The MDHHS provided documentation of MV-1's living arrangements, which are listed below:

| Placement Start Date | Placement End Date | Provider Name |
|---|---|---|
| 11/23/2020 | 07/27/2021 | Parental Home |
| 07/27/2021 | 08/05/2021 | Wayne County Juvenile Detention |
| 08/05/2021 | 09/05/2021 | Let's Talk About It Home for Young Men |
| 09/05/2021 | 09/16/2021 | Bronson Hospital |
| 09/16/2021 | 09/30/2021 | Wolverine Center |

| 09/30/2021 | 11/09/2021 | AWOL |
| 11/09/2021 | 06/16/022  | Wayne County Juvenile Detention |
| 06/16/2022 | 08/22/2022 | Calumet Center |
| 08/22/2022 | Ongoing    | Lincoln Center |

21) According to SSA records, HOBBS was selected to serve as payee for MV-1 in January 2021. In both his representative payee application and the payee selection notice, the SSA informed HOBBS that he was required to report any changes that may affect MV-1's eligibility for SSI to the SSA within 10 days after the month the change takes place. Included in the list of changes to report were whether MV-1 moved or if he was in a hospital, jail, or other institution for a full calendar month.

22) As part of this investigation, I reviewed the recorded witness interview with HOBBS that took place in April 2021, in connection with the investigation into WHITE. As previously mentioned, during the interview, HOBBS expressed disapproval of WHITE's conduct as MV-1's payee. HOBBS stated:

> "She was his payee. He'd been gone for two years or probably a little longer. She haven't [sic] bought him nothing since he been in that place. Man, nothing. She been keeping all his money. That's point blank period. . . . I don't know man, it's just crazy because she had his money and um you not, you didn't take care of him. You know what I'm saying. This is his money. Like I'm his payee, that's not my money. This is his money.

> That [sic] why he have a flat screen, his own bedroom, or
> big bed, video games, and he get clothes, he gets shoes or
> he get money in his pocket to go get your haircut. This
> his money to do things for. You know what I'm saying?
> Stuff like that. He might want to go skating or something,
> ok here you go. You know what I'm saying?"

23) In January 2022, HOBBS completed an SSI redetermination on MV-1's behalf, and he indicated that MV-1 had not spent a calendar month in a hospital, nursing home, correctional facility, or any other type of institution since January 1, 2021. HOBBS further indicated that MV-1 lived with him at his residence in Detroit, MI since November 23, 2020.

24) In March 2023, HOBBS completed and returned an SSA Representative Payee Accounting Form. The form asked HOBBS to provide information relative to and account for the SSI benefits that he received on behalf of MV-1 from December 1, 2020, through March 8, 2023. HOBBS indicated that MV-1 lived with him during that timeframe, that he decided how MV-1's benefits were spent, and that he spent $20,000.00 on MV-1's care and support and saved $0.00.

25) In March 2023, I provided the SSA with the MDHHS documentation regarding MV-1's living arrangements, and the SSA suspended MV-1's SSI entitlement effective May 2023, pending additional review of MV-1's SSI eligibility. [Agent Note: MV-1's April 2023 SSI payment was scheduled for

        March 31, 2023, and, due to SSA system processing time, it could not be withheld.]

26) In April 2023, I interviewed HOBBS at his residence. HOBBS acknowledged that MV-1 was placed in juvenile detention on July 27, 2021, and that he had lived in various facilities ever since. HOBBS said that he expected and wanted MV-1 to come home, but MV-1 kept getting in trouble. HOBBS stated that at some point he realized he should have told the SSA about MV-1's whereabouts, but he was scared the SSI benefits would stop, and he was having trouble making ends meet. HOBBS said that he used MV-1's money to pay for rent and general household expenses. When asked why he gave inaccurate information about MV-1's living arrangements on the Representative Payee Accounting Form, HOBBS replied that he knew he should have given accurate information, but he was dishonest because he knew that MV-1 was coming home someday and because he needed to pay rent. HOBBS stated that he was afraid the money would stop if he gave the correct information.

27) The investigation revealed that HOBBS knew that MV-1 was not coming home. According to a Wayne County Third Judicial Circuit Court Order

following a Permanency Planning Hearing/Child Protective Proceeding held regarding MV-1 on May 10, 2022:

- The court found that returning MV-1 to his parent(s) would cause a substantial risk of harm to MV-1's life, physical health, or mental well-being, and that MV-1 should not be returned to them;
- Reasonable efforts had previously been made to return MV-1 to HOBBS. In a description of those efforts, it stated: "The agency has been in contact with the father; he reports that he is not willing to plan for [MV-1];" and
- "No parent appeared [at the hearing]. Father [HOBBS] is no longer pursuing custody and his custody motion has been dismissed. Father has reported that de [sic] does not believe he can keep his other children safe in the presence of [MV-1]. The father is encouraged to remain involved with and supportive of [MV-1]."

28) I provided the SSA with my investigative findings regarding HOBBS. The SSA determined that HOBBS misused $17,718.00 of MV-1's SSI benefits because he continued to receive and use the benefits even though MV-1 was not in his custody from August 2021 to April 2023. Of the misused funds, MV-1 was eligible for $2,134.34; the remaining funds belonged to the SSA.

## CONCLUSION

29) Accordingly, based upon my training, experience, and the facts set forth in this Affidavit, there is probable cause to believe that WHITE and HOBBS, while serving in an official capacity as Representative Payee, unlawfully retained and converted SSI benefits intended for MV-1, and did thereby knowingly and intentionally violate Title 18 U.S.C. § 641; Title 42 U.S.C. § 1383a(a)(3); and Title 42 U.S.C. § 1383a(a)(4).

I, MEGAN SO, Special Agent with the Social Security Administration, Office of the Inspector General, Office of Investigations, being duly sworn according to law, hereby affirm that the facts stated in the foregoing affidavit are true and accurate to the best of my knowledge, information, and belief.

_____
MEGAN SO
Special Agent, SSA/OIG/OI

Sworn to before me and signed in my
presence and/or by reliable electronic means.

_____
KIMBERLY G. ALTMAN
United States Magistrate Judge

- 15 -

July 15, 2025